IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| RLI INSURANCE COMPANY, | § § | |
| *Plaintiff*, | § § | Civil Action No. 1:05-CV-352 |
| v. | § § | |
| GREAT AMERICAN INSURANCE COMPANY, | § § § | JUDGE RON CLARK |
| *Defendant*. | § § | |

## ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT

Before the court are Plaintiff RLI Insurance Company's Motion for Summary Judgment [Doc. #31] and Defendant Great American Assurance Company's Motion for Summary Judgment [Doc. #32]. Both parties assert the determination of the contested policy language is an issue for the court to decide. Because there remain fact issues surrounding the underlying parties and the policies in question, both Plaintiff's and Defendant's motions for summary judgment are denied.

### I. Background

Defendant Great American Assurance Company ("Great American") removed the case in May of 2005. The case centers around a multi-vehicle collision which occurred January 7, 2004. The collision involved a truck owned by Marvin Hampton ("Hampton") and driven by Marvin Douglas ("Douglas"). The truck had been leased to Quickway Express, Inc. ("Quickway") for a delivery, using a Quickway trailer, in and around Conroe, Texas. Douglas drove to Conroe and picked up his trailer, made deliveries, returned the trailer to the Quickway

terminal in Conroe and finally returned to Beaumont. The accident occurred just outside Beaumont, in Liberty County.[1]

The dispute centers around two insurance polices. The first was a trucking policy, issued by Plaintiff RLI Insurance Company ("RLI") to Quickway and the second, a non-trucking policy, issued by Defendant Great American Assurance Company ("Great American") to Hampton.

At issue is which policy covers alleged personal injuries from the multi-vehicle collision. Both RLI and Great American have moved for summary judgment. RLI asserts that Great American did not present proper documents to the Texas Depart of Insurance ("TDI") regarding certain exclusions they now seek to enforce. In addition, RLI contends Douglas could not have been "in the business" of Quickway upon his return from Conroe. Great American argues that, as a matter of law, RLI's policy covers the driver and/or owner of the vehicle, and, that based on certain exclusions, they are entitled to summary judgment. RLI does not contest its policy coverage, however, RLI contends that Great American is the primary carrier and RLI is liable only for excess coverage.

## II. Standard of Review

The party moving for summary judgment under Fed. R. Civ. P. 56 has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986). Movant may show that the undisputed material facts affirmatively establish a right to judgment. Alternatively, movant may establish that the other party has the burden of

---

[1] The facts surrounding the lease and drive to Conroe, as well as the return to Beaumont are not supported by evidence in the record.

2

proof at trial, and has failed to "make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S. Ct. 1689 (1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2522 (1986)). In order to avoid summary judgment, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1335 (1986); *Anderson*, 477 U.S. at 257, 106 S. Ct. at 2514. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S. Ct. at 1356. Fed. R. Civ. P. 56 requires that the nonmoving party set forth specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 256, 106 S. Ct. at 2514. Only a genuine dispute over a material fact (a fact which might affect the outcome of the suit under the governing substantive law) will preclude summary judgment. *Anderson*, 477 U.S. at 248 106 S. Ct. at 2510. The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party on the issue. *Id.* If the factual context renders a claim implausible (for example if the claim simply makes no economic sense) nonmovants "must come forward with more persuasive evidence to support their claim than would otherwise be necessary. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.

      Fed. R. Civ. P. 56(c) requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356. However, only *reasonable* inferences in favor of the nonmoving party can

be drawn from the evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468, 112 S. Ct. 2072, 2083 (1992).

### III. Analysis

A. RLI's Motion for Summary Judgment

RLI asserts that the exclusions Great American relied on in denying coverage are unenforceable under Texas law because they were not submitted to the Texas Department of Insurance. In addition, RLI contends that after Douglas dropped his load off at the Quickway terminal and completed his paperwork, he was no longer "in the business" of Quickway, thus rendering Great American liable for primary coverage. After reviewing the motion and response, RLI is correct as to their first argument. Great American does not claim that the exclusionary clauses were presented to the TDI. Great American can not rely on an exclusion it failed to present to the TDI. However, this does not make the policy void - only voidable. *Urrutia v. Decker*, 992 S.W.2d 440 (Tex. 1999). There still exists a fact issue as to whether Hampton assented to the exclusion.

RLI's second argument is not proper for summary judgment, and leaves open a fact issue as to whether Douglas was "in the business" of Quickway upon his return from Conroe. There is no controlling precedent on this issue.

RLI has stated five reasons why Douglas was not "in the business" during the ride from Conroe to Beaumont: (1) his business ceased upon his delivery of the trailer to the Quickway terminal; (2) ambiguous contract language is construed against insurer; (3) activities did not intimately involve Quickwy; (4) bob-tail coverage would be useless otherwise; and (5) employee commutes are not in the course and scope of employment. Great American has asserted two main

reasons why the "in the business" language (absent its specific exclusions) causes Douglas to be working for Quickway: (1) returning to Beaumont was no less essential to Quickway than maintenance on a truck while cargo is being loaded for delivery; and (2) a driver is owed a commute home.

While the parties agree there is no controlling precedent, they both cited some of the same cases, albeit for different propositions. The first is *Empire Fire and Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 699 A.2d 482 (Md. Ct. Spec. App. 1997). The case of *Empire Fire* involved a driver who got into an accident after returning to his home terminal and subsequent to that stopping to get parts for a toolbox. *Id.* at 496. The Court held "[g]enerally, once a lessor-driver returns to his 'home terminal' after completing an assignment, his business with the carrier-lessee is complete. If the lessor then drives to his residence, he is no longer operating the truck in the business . . ." *Id.*

Great American seemingly argues that Douglas' return to the Beaumont area was a return to his home terminal. RLI asserts that the Quickway terminal in Conroe was the home terminal. The Court finds that in this context, the definition of "home terminal" could be either, and more facts would be needed to resolve the issue. Both parties cite *Saint Paul Fire & Marine Ins. Co. v. Frankart*, 370 N.E.2d 1058, 1062 (Ill. 1977) for the "home terminal" proposition. In this case, the court stated the point when an owner-driver's engagement in the lessee's business terminates is when: (1) he returns to the point where the haul originated; or (2) he returns to the terminal from which the haul was assigned; or (3) he returns to the home terminal from which he customarily obtained his next assignment. *Id.* at 1062. The court finds that these three options could implicate the termination point to be either Beaumont or Conroe. Maybe the depositions

of Douglas and Hampton have been taken, maybe they have not.  It is clear that the parties seek to assume facts about Hampton's business and dealings with Quickway, and whether Douglas was going home or to a "terminal," which are absent from the record.  Both parties have failed to meet their burden of production.

RLI also makes an argument based on contract interpretation.  RLI cites *Assicurazioni Generali, S.p.A. v. Ranger Ins. Co.*, 64 F.2d 979 (5th Cir. 1995) for the proposition that ambiguous language in an insurance contract should be construed against the insurer.  Great American cites the case as distinguishable from the present suit because in *Assicurazioni*, as Great American contends, the policy language is different.  In *Assicurazioni* the driver was en route to repair brakes when the accident occurred.  *Assicurazioni Generali*, 64 F.3d at 981.  The driver was not transporting property nor under dispatch, but was driving the truck bobtail.  *Id.*  However, the case indicates that the driver took the truck out of service to repair the brakes.  *Id.* at 983.  The Court found two reasonable constructions of the phrase "in the business of transporting property by auto for others."  *Id.*  Based upon this and the principles of drafting contract language, the Court found ambiguity and did not apply the exclusion in question.  *Id.*

RLI also makes the argument that interpretation of insurance contracts is governed by the same rules that apply to contracts in general.  *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998); *Balandran v. Safeco Ins. Co. of Am.*, 927 S.W.2d 738, 740-41 (Tex. 1998).  The plain language of an insurance policy, like any other contract, will be given effect when the parties' intent may be discerned from the language.  *Glover v. National Insurance Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977).  In determining the parties' intentions, intent must be taken from the agreement itself, not from the parties' present interpretation.  *CMS Partners, Ltd. v.*

*Plumrose USA, Inc.,* 101 S.W.3d 730, 732 (Tex.App.–Texarkana, 2003, no pet.). In the absence of ambiguity, the court is to interpret the policy from the four corners of the document. *Lyons v. State Farm Lloyds and National Casualty Company*, 41 S.W.3d 201, 206 (Tex.App. – Houston [14th Dist.] 2001, pet. denied). If an insurance policy is subject to more than one reasonable interpretation, the court must adopt the construction most favorable to the insured when resolving the uncertainty. *State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex. 1998). But this is not a dispute between insurer and insured. The argument that RLI asserts might be valid, but not at this stage. The phrase "in the business" might be subject to conflicting interpretations, as stated above. The lack of facts allow conflicting interpretations, so RLI's motion on this issue is denied.

RLI's remaining arguments as to carrying bob-tail coverage and analogizing this case to an employee commute are also denied. The fact that a party carries, or should carry, bob-tail coverage is not something that will resolve any issue in this case. The analogy to an employee commute is also something that does not resolve this particular coverage dispute and, if anything, emphasizes the existence of genuine issues of material fact as to whether Douglas was commuting or not.

### B.  Great American's Motion for Summary Judgment

The only remaining issues left in Great American's motion are the following: (1) RLI's coverage; and (2) overlap of policy coverage. The first issue, as RLI has stated is moot. RLI does not dispute that it owes coverage to the injured parties. What RLI seeks is a determination that Great American does too, and that it has the primary coverage.

As there are fact issues with whether Great American was proper in its denial, this issue is not ripe for summary judgment. Accordingly, Great American's motion is denied.

### IV.  Conclusion

This case centers around the dealings of Hampton and Quickway. Neither party has provided any evidence relating to that relationship. Summary judgments are only granted when there are no genuine issues of material fact. Here, not only are there fact disputes, there are essential facts not even presented to the court. The parties should be prepared to try the case in March.

IT IS THEREFORE ORDERED that RLI's Motion for Summary Judgment **[Doc. #31]** is **DENIED**.

IT IS FURTHER ORDERED that Great American's Motion for Summary Judgment **[Doc. #32]** is **DENIED**.

So **ORDERED** and **SIGNED** this **7**   day of **February, 2006.**

_____
Ron Clark, United States District Judge