IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| RLI INSURANCE COMPANY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | Civil Action No. 1:05-CV-352 |
| v. | § | |
| | § | |
| GREAT AMERICAN INSURANCE | § | JUDGE RON CLARK |
| COMPANY, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION

This declaratory judgment action was filed by RLI Insurance Co., ("RLI") against Great American Insurance Co. ("Great American") to determine insurance coverage. Marvin Hampton ("Hampton") agreed with Quickway Express, Inc. ("Quickway") to purchase a Volvo tractor used to haul trailers (together commonly known as eighteen wheeler truck rigs) and then to lease the tractor to Quickway. Hampton's driver, Marvin Douglas ("Douglas") had delivered a load for Quickway, and was driving the Volvo Tractor to his home from the Quickway terminal in Conroe, Texas when he had an accident. RLI and Great American are disputing coverage for the accident.

RLI seeks a determination that Great American's "non-trucking" or "bobtail" policy is the primary coverage. A "non-trucking" or "bot-tail" policy is used to provide coverage for a Tractor when it is being used simply for transportation, as opposed to having a Trailer or otherwise being used in the trucking business. RLI asserts that Douglas was not hauling a load and was not driving in the business of Quickway at the time of the accident. Great American argues that exclusions in its policy bar recovery, and alternatively, if the State of Texas form policy controls, that Douglas was operating "in the business of Quickway."

1

After the court denied cross motions for summary judgment, the parties agreed to submit the case for decision, as though it was a trial to the court, based solely upon stipulations, agreed exhibits, and deposition testimony.  The parties agreed that no witnesses would testify, and that the court would make such credibility determinations as possible from the depositions, as though those witnesses had testified live.  Additionally, Exhibit 23 was submitted by RLI and objected to by Great American.[1]

The court has filed Findings of Fact and Conclusions of Law.  This Memorandum Opinion expands upon the basis for the court's conclusions.

The dispute centers around two insurance polices.  The first was a trucking policy, issued by RLI to Quickway and the second, a non-trucking policy, issued by Great American to Hampton. At issue is which policy covers alleged personal injuries from the multi-vehicle collision.

RLI asserts that Great American did not present proper documents to the Texas Depart of Insurance ("TDI") regarding certain exclusions they now seek to enforce.  In addition, RLI contends Douglas could not have been "in the business" of Quickway upon his return from Conroe.  Great American argues that based on certain exclusions, the denial of coverage was proper and in the alternative, Douglas was "in the business" of Quickway when the accident occurred.

The parties also dispute which has primary coverage.  RLI does not contend that its policy does not provide coverage.  However, RLI contends that Great American is the primary carrier and RLI is liable only for excess coverage.  Great American, while it denies coverage, argues in the alternative, that if it does provide coverage it would be co-primary.

_____

[1] The exhibit is immaterial.  The court did not rely on it in making any findings of fact.

2

## I.  Analysis

### A. Coverage Dispute

This is a diversity case and is decided under Texas law.  The court must determine how a Texas court would interpret the contracts.  *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938).

Interpretation of insurance contracts is governed by the same rules that apply to contracts in general.  *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998); *Balandran v. Safeco Ins. Co. of Am.*, 927 S.W.2d 738, 740-41 (Tex. 1998).  The plain language of an insurance policy, like any other contract, will be given effect when the parties' intent may be discerned from the language.  *Glover v. National Insurance Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977).  In determining the parties' intentions, intent must be taken from the agreement itself, not from the parties' present interpretation.  *CMS Partners, Ltd. v. Plumrose USA, Inc.,* 101 S.W.3d 730, 732 (Tex.App.–Texarkana, 2003, no pet.).  In the absence of ambiguity, the court is to interpret the policy from the four corners of the document.  *Lyons v. State Farm Lloyds and National Casualty Company*, 41 S.W.3d 201, 206 (Tex.App. – Houston [14th Dist.] 2001, pet. denied).  If an insurance policy is subject to more than one reasonable interpretation, the court must adopt the construction most favorable to the insured when resolving the uncertainty.  *State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex. 1998).

RLI asserts that the exclusions Great American relied on in denying coverage are unenforceable under Texas law because it is uncontested that they were not submitted to the Texas Department of Insurance ("TDI").  An insurer may only use a form adopted by the Board of Insurance in writing motor vehicle insurance delivered, issued for delivery, or renewed in this State.

3

Tex. Rev. Civ. Stat. Ann. art. 5.06 (2) (Supp. 2005).  Agreements to issue insurance policies that are not approved by the Texas Board of Insurance might be illegal.  *See Oakes v. Aetna Cas. & Surety Co.*, 551 S.W.2d 504, 505 (Tex. 1977).  A "master policy" with endorsements, issued by a "national organization of insurance companies, or similar organization" may be approved by the Board, if the form provides coverage equivalent to the coverage of the approved form.  Tex. Rev. Civ. Stat. Ann. art. 5.06 (3) (Supp. 2005).  Here, there is no question that the policy was not approved by the TDI.

An unapproved policy is voidable, and an insured may elect to rescind it.  *Urrutia v. Decker*, 992 S.W.2d 440, 443 (Tex. 1999).  If the insured elects to accept the insurance . . . he or she must do so under the agreed terms.  *Urrutia v. Decker*, 992 S.W.2d 440, 443 (Tex. 1999).  Accepting benefits from the policy would cause the insured to accept the entire policy, both the good and bad.  *Urrutia v. Decker*, 992 S.W.2d 440, 443-44 (Tex. 1999).  However, neither Hampton nor Douglas approved of or agreed to the non-standard exclusions of Section II(C), 13(d) or 13(e).

Great American has not shown by a preponderance of the evidence that Hampton or Douglas accepted any prior benefit of the Great American non-trucking policy.  This case is not precisely analogous to *Urrutia*, where the Plaintiff accepted a benefit from the policy, namely payment of $20,000 - the policy limits, and thus was forced to accept those limits.  *Urrutia*, 992 S.W.2d at 443-44.  Great American is asserting that Hampton should get nothing now, simply because he has the policy and might get a benefit from it in the future.  Texas courts are not likely to find that an unapproved exclusionary provision could be used to render the policy nugatory.  This would penalize the innocent insured in contravention of Texas law, without any benefit to the insured.  Following the Texas Supreme Court's decision in *Urrutia*, the court concludes that exclusions 13(d) and 13(e) are not enforceable by Great American.  Hampton/Douglas are entitled to coverage under

the remaining terms of the policy.[2]  Accordingly, the sole issue left is whether the driver was "in the business of Quickway" when returning to Beaumont from the Conroe terminal.[3]

The "home terminal" for Douglas or Hampton was the Quickway terminal in Conroe, Texas. The haul originated in Conroe, Texas.  The haul was assigned out of the Quickway terminal in Conroe, Texas.  The assignment customarily came from the Quickway terminal in Conroe, Texas. Douglas was returning to Beaumont for his own convenience and not under dispatch with Quickway.

An employee going to an from work is not ordinarily within the course and scope of his employment, unless the employee was on a "special mission" at the direction of his employer, or performing a service in furtherance of the employer's business with the express or implied approval of the employer.  *American Gen. Ins. Co. v. Coleman*, 303 S.W.2d 370, 374 (Tex. 1957); *Mayes v. Goodyear Tire and Rubber Co.*, 144 S.W.3d 50, 56 (Tex. App. -- Houston [1st Dist.] 2004, pet. filed).  The record contains no evidence that Douglas was on a "special mission" for Quickway or performing any service for Quickway while returning to Beaumont from Conroe.  This drive was nothing more than a commute to and from work and that alone is not enough to establish Douglas as being "in the business" of Quickway.

### B. Primary v. Excess Dispute

RLI contends that after Douglas dropped his load off at the Quickway terminal and completed his paperwork, he was no longer "in the business" of Quickway, thus rendering Great American liable for primary coverage.  This issue is resolved by looking at the policies in questions.

---

[2] The parties seemed to agree that the failure to obtain approval of the exclusions meant that coverage defaulted to the Texas form TE 00 01, with endorsement TE 2309.  This does not seem to follow *Urrutia*, but the result would be the same.  Great American would have coverage.

[3] This term is found in exclusion 13 of Great American's policy and in TE 2309.

5

Based upon the Findings of Fact and Conclusions of Law and as explained above, Great American's exclusions 13(d) and 13(e) are not enforceable.  However, the entire policy is not null and void. Great American's policy, Section V(B)(5) makes the policy coverage excess over any other collectible insurance.  RLI's policy Section V(B)(5) makes RLI responsible for excess coverage too. Great American and RLI are liable for damages, if any, in proportion to the limits of the respective polices.

## II.  Conclusion

Judgment will be entered in conformity with the Findings of Fact and Conclusions of Law.

So **ORDERED** and **SIGNED** this **2**   day of **May, 2006.**

_____

Ron Clark, United States District Judge